UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POONAM KESWANI,

Plaintiff,

-against-

SKYFI CAPITAL PARTNERS INC., *et al.*,

Defendants.

25-CV-7108 (DEH) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. DALE E. HO**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 9/8/26

**BARBARA MOSES, United States Magistrate Judge.**

On December 2, 2024, Gia Treasures, LLC (Gia), owned by plaintiff Poonan Keswani, agreed to sell $145,000 in future receipts to SkyFi Capital Partners, Inc. (SkyFi), for a purchase price of $100,000. Plaintiff signed the contract on behalf of Gia and personally guaranteed Gia's performance. For several months, SkyFi made daily withdrawals from Gia's designated bank account at JPMorgan Chase Bank, N.A. (Chase), in the amount specified in the parties' contract. But on June 25, 2025, SkyFi sued Gia and Keswani in New York Supreme Court, Monroe County, alleging that Gia breached that contract and that plaintiff breached her guaranty. On August 6, 2025, SkyFi obtained a default judgment against Gia and plaintiff in the amount of $143,785.42, and thereafter attempted to collect that judgment from Gia's accounts at Chase.

Neither Gia nor plaintiff has made any effort to vacate the state court judgment. Instead, on August 27, 2025 – three weeks after that judgment was entered – plaintiff initiated this pro se action, in her own name, against seven defendants: SkyFi; Katherine Kim, SkyFi's controller, who verified its state court complaint; "Seth Butress," described by plaintiff as the SkyFi "financier" who induced her to enter into the future receipts transaction[1]; Chase; Steven Zakharyayev, Esq.

[1] In the Complaint, plaintiff identifies this defendant as "Seth Butress." Elsewhere in the record, he is identified by his own counsel variously as "Seth Burgis," *see* Dkt. 28 at 1, "Sethna Burgis," *see* Dkt. 29 at 1, "Burgis Sethna," *see id.*, and "Sethna Bugress." *See* Dkt. 55 ¶ 1. In this Report and Recommendation, I accept plaintiff's version of his name.

who signed the state court complaint; the Law Offices of Steven Zakharyayev, PLLC (Zakharyayev PLLC); and Jamie Romeo, the Monroe County Clerk. Plaintiff alleges that Butress duped her into signing documents that she did not understand, *see* Compl. (Dkt. 1) ¶¶ 14-19; that Butress and SkyFi used those "bogus" documents to "pilfer[]" money from Gia's bank accounts, *id*. ¶¶ 19-21, 23-29; that SkyFi did not provide all of the promised financing, *id*. ¶¶ 22, 30; that it "falsely sued her" in an inconvenient forum, where it obtained a "false judgment" with the help of Zakharyayev, Romeo, and Chase, *id*. ¶ 30; and that Zakharyayev, "[a]rmed with the bogus judgment," "induced" Chase to "confiscate" funds from Gia's accounts. *Id*. ¶¶ 36-38.[2] Plaintiff further alleges that on April 3, 2025, Butress "agreed to hold" 19 valuable pieces of jewelry for her "in his vault," but has refused to return them, despite her demand. *Id*. ¶¶ 42-45.

Plaintiff sues under the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, *see* Compl. ¶¶ 46-51; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692f and 1692e, *see id*. ¶¶ 52-55; New York law (for "trespass, [t]ortious interference, [l]arceny, [and] violation of the right to privacy"), *see id*. ¶¶ 56-59; and 42 U.S.C. § 1983. *See id*. ¶¶ 60-64. She seeks an order requiring Butress to return her personal property, *id*. ¶ 66; disgorgement of the daily remittances deducted from Gia's business checking account, totaling $58,690.80, *id*. ¶ 67; and damages in the amount of $20 million. *Id*. ¶¶ 69-70.

Now before me for report and recommendation are (i) a motion by Chase to dismiss plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) (Dkt. 30); (ii) a motion by SkyFi, Kim, and Butress (collectively, the SkyFi Defendants) to dismiss plaintiff's claims against them pursuant to Rule 12(b)(6) (Dkt. 54); and (iii) plaintiff's "motion to compel" Chase to "reopen and restore" Gia's bank accounts (Dkt. 73), which is in substance a motion for a

---

[2] In her Complaint – and other filings – plaintiff frequently places words or phrases in ALL CAPS for emphasis. In this Report and Recommendation, those emphases have been omitted.

preliminary injunction. After careful review of the file, I conclude that both of the motions to dismiss should be granted, and that plaintiff's preliminary injunction motion should be denied.

# I. BACKGROUND

## A. Factual Background

The following facts are drawn primarily from plaintiff's Complaint and its exhibits (filed collectively, along with the Complaint, at Dkt. 1). Additionally – because plaintiff's exhibits do not include all relevant filings in Monroe County – I have considered the pleadings and other papers filed in that forum, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991)).

Plaintiff Keswani resides in New York, *see* Compl. ¶ 4 (at pp. 2-3),[3] where she owns and operates Gia, a jewelry business. *Id*. ¶¶ 4, 14, 19.[4] SkyFi "may be an entity authorized to do business in New York State." *Id*. ¶ 5.[5] In 2024, plaintiff was introduced to Butress, and they "became acquainted." *Id*. ¶¶ 12-13. When plaintiff "needed [a] loan for her business," Butress "assured her that he was capable of loaning her the funds she needed," *id*. ¶ 14, and specifically agreed to "loan the amounts of $100,000 and $75,000 to plaintiff." *Id*. ¶ 15.[6]

---

[3] The Complaint contains two paragraphs numbered "4."

[4] The website of the New York Department of State, Division of Corporations, confirms that Gia is a New York limited liability company with an address for service in New York City. *See* https://perma.cc/7T2Z-6ZT5.

[5] The website of the New York Department of State, Division of Corporations, confirms that SkyFi is a foreign business corporation, formed in Wyoming, which is authorized to do business in New York and has an address for service in New York City. *See* https://perma.cc/8P4E-A7UD.

[6] As discussed in Part I(A)(2), *infra*, it appears that Gia entered into two successive transactions with SkyFi, each structured as a sale of future receivables.

**1. The Signed Agreements**

On December 2, 2024, in Butress's office, *see* Compl. ¶ 16, plaintiff executed a number of financing documents, including an Agreement for the Purchase and Sale of Future Receipts between Gia and SkyFi (12/2/24 Purchase Ag.), *see id*. Ex. A (Dkt. 1 at ECF pp. 17-25); a Personal Guaranty of Performance (12/2/24 Guar.), *see id*. (at ECF pp. 26-28); an Authorization Agreement for Automated Clearing House Transactions (12/2/24 Auth. Ag.), *see id*. (at ECF pp. 29-30); and an Affidavit of Confession of Judgment (12/2/24 Conf. of J.), *see id*. (at ECF pp. 31-32).

In the purchase agreement, Gia agreed to sell $145,000 of its "future sale[s]" to SkyFi, at the rate of $690.48 per business day, for a "purchase price" of $100,000, less an "origination fee" of $8,000 and an "underwriting fee" of $1,000. 12/2/24 Purchase Ag. at 1. In other words, Gia agreed that, in return for a cash advance of $91,000, it would pay a total of $145,000 to SkyFi, out of its future receipts, at the rate of $690.48 per business day.[7] Gia further agreed that it would deposit all of its future receipts into a single business banking account, which it would not use "for any personal, family or household purposes," and that that it would "provide an appropriate ACH [automated clearing house] authorization" to SkyFi so that SkyFi could make daily withdrawals from that account in the amount of $690.48 (plus various fees in the event payments were returned or stopped). *Id.* at 2, ¶ 1 & App. A (fee schedule). In the accompanying authorization agreement, Gia authorized SkyFi to present ACH debits directly to the designated bank account "in the amount of fees and other obligations due to [SkyFi] from [Gia]" under the terms of the purchase agreement. 12/4/24 Auth. Ag. at 1. Gia further authorized SkyFi, "if an Event of Default . . . occurs," to "debit all accounts controlled by [Gia]" up to the "total amount . . . due to [SkyFi] from [Gia] under the terms of the [purchase] [a]greement." *Id*. Plaintiff signed both of these documents as Gia's

[7] Assuming that Gia had sufficient receipts to remit $690.48 every business day, it would take approximately 42 weeks to remit the full $145,000.

"authorized representative" and President, 12/4/24 Ag. at 1-2; 12/4/24 Auth. Ag. at 1, and initialed each page.

In the guaranty, plaintiff personally guaranteed "prompt and complete performance of all of [Gia's] obligations under the Purchase Agreement." 12/2/24 Guaranty at 1, ¶ 2. In the affidavit of confession of judgment, plaintiff authorized entry of judgment against Gia and herself, individually, in the amount of $145,000, "less any receivables delivered," plus interest at 16%, costs and disbursements, and "an additional sum for . . . legal fees to Plaintiff calculated at 33% of the total of all the aforesaid sums." 12/2/24 Conf. of J. at 1. Plaintiff further agreed (on her own behalf and on behalf of Gia) to "authorize entry of judgment . . . in any and all Counties in the State of New York"; consented to "personal jurisdiction in the county in which the Affidavit of Confession of Judgment is filed"; and expressly waived any defenses based on jurisdiction, venue, or "inconvenient forum." *Id*. at 1-2.

Plaintiff concedes that she signed all of these documents (totaling 16 pages), but alleges that she did so "under duress," Compl. ¶ 4 (at p. 2), after Butress placed a "mountain of documents" in front of her, assured her that "it was just routine," and told her that if she did not sign that day "she would not get the loans." *Id*. ¶ 17. Plaintiff further alleges that she never "fully comprehended" the papers she signed, believing that they were "actual loan documents." *Id*. ¶ 18. Thereafter, when SkyFi began taking $690.48 per day out of Gia's business banking account, plaintiff learned "to her nightmare" that the purchase agreement was "an artfully designed bogus document" which "made it look as if I agreed that defendant SkyFi was purchasing goods worth $145,000 for $100,000, from my company, Gia Treasures LLC." *Id*. ¶ 19. Throughout her complaint, plaintiff characterizes the terms of the documents she signed as "parasitic," "dubious," "bogus," and "unconscionable," and describes the daily deduction from Gia's bank account, which began on

December 4, 2024, as a "swindle," *id.* ¶¶ 4, 19-25, through which – she avers – SkyFi obtained a total of $58,690.80 ($690.48 x 85 days). *Id*. ¶¶ 26-29.

Plaintiff further alleges that SkyFi did not deposit the full $91,000 required by the Purchase Agreement. Instead, she avers, it deposited $30,000 on December 3, 2024, and another $20,000 on each of December 4 and 6, 2024, for a total of only $70,000. Compl. ¶ 22. Thus, by plaintiff's calculation, SkyFi "only 'loaned' $11,309.20, although she paid them back $75,000." *Id.* ¶ 30.[8]

### 2. The Monroe County Action

On June 25, 2025, SkyFi filed an action in Monroe County, docketed as *SkyFi Capital Partners Inc. v. Gia Treasures LLC and Poonam Keswani*, Index. No. E2025013981 (N.Y. Sup. Ct. Monroe Cty. June 25, 2025) (the Monroe County Action).[9] The complaint in the Monroe County Action (Monroe Cty. Compl.) was signed by Zakharyayev and verified by Kim. It alleged that Gia sold SkyFi future receipts "up to the sum of $145,000.00 & $105,000.00" in return for an "upfront purchase price of $100,000.00 & $75,000.00," but that on March 27, 2025, Gia "materially breached the terms of the Agreement" by "changing the designated bank account without [SkyFi's] authorization, by placing a stop payment on [SkyFi's] debits to the account or by otherwise taking measures to interfere with [SkyFi's] ability to collect the Future Receivables."

[8] The partial banking record excerpts and handwritten notes that plaintiff attaches to her Complaint as "Proof of Damages," *see* Compl. Ex. D (Dkt. 1 at ECF pp. 47-55), do not shed much light on this calculation. The banking record excerpts show that Gia maintained three checking accounts, with account numbers ending -3370, -3388, and -6591, *id*. at ECF p. 48, but plaintiff does not provide complete statements for any of them. According her handwritten calculations, SkyFi deposited a total of $129,660.60 into the account ending -3370, and Gia made total payments to SkyFi of $136,647.84, including 58 days of debits at the rate of $690.48 per day, a check for $75,000, periodic Zelle payments amounting to $14,000 (including $4000 paid on October 15, 2024, *before* SkyFi advanced any funds), and a "cash payment" of $12,600. *Id*. at ECF pp. 52-53.

[9] Plaintiff alleges that the state court action was filed by Butress as well as SkyFi. Compl. ¶ 32. She is mistaken.

Monroe Cty. Compl. ¶¶ 4, 8.[10] SkyFi asserted claims for breach of contract against Gia, *id*. ¶¶ 9-12, and for breach of guaranty against plaintiff. *Id*. ¶¶ 13-14. SkyFi requested judgment in the amount of $138,785.42, plus interest since March 27, 2025. *Id*. ¶¶ 12, 14.

As filed in state court, the Monroe County Complaint attached four exhibits. Exhibit A comprises the December 2, 2024 purchase agreement, guaranty, authorization agreement, and affidavit of confession of judgment. *See* Monroe Cty. Compl. Ex. A (NYSCEF Doc. No. 2).[11] Exhibit B comprises a nearly identical set of documents, all dated February 13, 2025, in which plaintiff apparently agreed, on behalf of Gia, to sell another $105,000 in future receivables to SkyFi for the upfront purchase price of $75,000, less an origination fee of $6,000 and an underwriting fee of $1,000. *See* Monroe Cty. Compl. Ex. B (NYSCEF Doc. No. 3). Under the terms of the February 13, 2025 transaction, SkyFi was authorized to debit $833.34 from Gia's bank account every business day until SkyFi received $105,000. *See id*. Exhibit C is SkyFi's account statement for the December 2, 2024 transaction, reflecting an "amount due" of $36,452.16. *See* Monroe Cty. Compl. Ex. C. (NYSCEF Doc. No. 4). Exhibit D is SkyFi's account statement for the February 13, 2025 transaction, reflecting an "amount due" of $102,333.26. *See* Monroe Cty. Compl. Ex. D (NYSCEF Doc. No. 5).[12]

---

[10] A partial copy of the Monroe County Complaint (including the verification but missing its exhibits) is attached to plaintiff's Complaint as Exhibit B (Dkt. 1 at ECF pp. 35-38). The complete contents of the docket in the Monroe County Action, of which this Court may take judicial notice, are available online. *See* New York State Unified Court System, NYSCEF – New York State Courts Electronic Filing, https://perma.cc/YQ49-DCZB.

[11] Exhibit B to plaintiff's Complaint in this action is an exact copy of Exhibit A to the Monroe County Complaint, including the electronic file stamps affixed to each page by NYSCEF.

[12] The account statements do not reflect the amount or the dates of the advances made by SkyFi to Gia. Instead, they begin with the amount of future receipts purchased ($145,000 for the December 2, 2024 transaction, and $105,000 for the February 13, 2025 transaction), from which various payments are deducted (including the daily disbursements and, in one instance, a lump sum of $75,000). Both account statements reflect that the daily disbursements were collected without incident, via ACH, through March 3, 2025, after which the ACH payments "bounced," and SkyFi

On June 26, 2025, SkyFi filed a proof of service in the Monroe County Action (NYSCEF Doc. No. 6) in which attorney Zakharyayev attested that he served the summons and complaint on Gia and plaintiff that day, via certified mail to their addresses in New York City, return receipt requested, in accordance with the Purchase Agreements.[13] Neither Gia nor plaintiff ever appeared in the Monroe County Action. On August 6, 2025, SkyFi requested, and the court issued, a default judgment against both Gia and plaintiff (the Monroe County Judgment), in the amount of $143,757.60. *See* Compl. Ex. C (Dkt. 1 at ECF pp. 40-41).[14] The judgment was signed by a "Clerk" whose signature is indecipherable.

Plaintiff describes the Monroe County Complaint as "frivolous and bogus," and complains that the action "was [in] the wrong forum." Compl. ¶¶ 32-33.[15] She further alleges that "state actors" Zakharyayev and Romeo "were aware that [the state court case] was [in] the wrong forum," and asserts that Butress "repeatedly bragged how he had many county court clerks outside New York County in his pocket who can give him judgments with a snap of his fingers." *Id.* ¶ 33. She then charges that Romeo, the Monroe County Clerk, "entered a frivolous judgment against plaintiff without demanding compliance with New York law from the bad actors." *Id.* ¶ 35. She does not,

---

began adding fees, including a $500 fee for each payment that bounced and a $5000 "default fee" in each account.

[13] *See* 12/2/24 Purchase Ag. ¶ 31 (consenting to service of process "by registered or certified mail, return receipt requested").

[14] The judgment includes interest at the New York State rate of 9% since March 27, 2025, and court costs. It does not include any attorneys' fees.

[15] The Monroe County Supreme Court sits in Rochester, New York, approximately 250 miles (as the crow flies) from New York City, where all of the parties to that case (and SkyFi's lawyer) were located. SkyFi may well have chosen that forum to make it as inconvenient as possible for Gia and plaintiff to defend the case. However, as noted above, plaintiff agreed, when she signed the affidavit of confession of judgment, that SkyFi could use it "in any and all Counties in the State of New York." 12/2/24 Conf. of J. at 1. In the same document, she consented to "personal jurisdiction in the county in which the Affidavit of Confession of Judgment is filed" and expressly waived any defenses based on jurisdiction, venue, or "inconvenient forum." *Id.* at 2.

however, allege the Butress had any actual communications with Romeo, much less had her in his "pocket."

With the default judgment in hand, defendants allegedly "induced Chase to confiscate and enter a bogus negative balance of -$287,454.43." Compl. ¶ 36.[16] This led to "a deprivation of secured rights in an immeasurable magnitude." *Id.* ¶ 38. Among other things, plaintiff's business was "paralyzed" for "nearly a month," leading to "missed transactions and businesses" and causing losses of "over $500,000." *Id.* ¶ 30. Plaintiff does not further elaborate on the losses to her business. She also suffered "injury to her reputation," unspecified "out-of-pocket expenses, [and] physical, emotional and mental pain and anguish[.]" *Id.* ¶ 51.

The docket of the Monroe County Action does not reflect any effort by plaintiff or Gia to vacate the default judgment or otherwise challenge SkyFi's claims in that action.[17]

---

[16] Plaintiff attaches what appear to be excerpts from Gia's banking records showing that – on an unspecified date – the "available balance" in each of its three Chase accounts (ending -3370, - 3388, and -6591) was approximately negative $287,000. *See* Compl. Ex. D (Dkt. 1 at ECF p. 47). However, she does not allege that SkyFi successfully garnished $287,000 (or any other amount) from the Chase accounts to satisfy the Monroe County Judgment.

[17] Under New York law, a defaulted defendant may move to vacate a judgment entered against it, pursuant to N.Y. C.P.L.R. (CPLR) 5015(a), "in the interests of substantial justice." *Crystal Springs Cap., Inc. v. Big Thicket Coin, LLC*, 220 A.D.3d 745, 746, 198 N.Y.S.3d 142, 144 (2d Dep't 2023) (internal quotations and citations omitted). If the judgment was based upon a merchant cash advance agreement that was packaged as sale of future receivables – but in substance constituted a loan at an interest rate in excess of 25% – the defaulted defendant may raise that argument in its motion to vacate, and will be entitled to vacate the judgment (and any post-judgment restraining order) if it can establish that the agreement "constituted a criminally usurious loan." *Id.* 220 A.D.3d at 747, 198 N.Y.S. 3d at 144-45; *accord Oakshire Props., LLC v. Argus Cap. Funding, LLC*, 229 A.D.3d 1199, 1200, 217 N.Y.S.3d 371, 375 (4th Dep't 2024) (permitting merchants to pursue a plenary action "to vacate the judgment by confession [previously taken] against them" on the ground that "the underlying transaction was not a sale of future receipts but, rather, a loan that contained a criminally usurious interest rate"). However, the motion to vacate must be made to "[t]he court which rendered [the] judgment" that the defaulted defendant seeks to vacate. CPLR § 5015(a). As discussed in Part III(A) of this Report and Recommendation, *infra*, a federal district court cannot grant that relief.

**3. The Jewelry**

On April 3, 2025, Butress "agreed to hold" 19 items of jewelry "for [plaintiff] in his vault," which he "assured" plaintiff "would be a safe place." Compl. ¶¶ 41-42; *see also id*. Ex. F (Dkt. 1) at ECF pp. 59-64 (photographs and descriptions of the 19 items). In total, the items of jewelry were valued at $454,000. *Id*. ¶ 43. Plaintiff does not explain why she entrusted these valuable items to Butress for safekeeping after learning that he was the "mastermind of [the] unconscionable swindle." *Id*. ¶ 4 (at p. 3). Nor does she disclose whether the jewelry was owned by Gia or personally by her. She does allege that Butress "refused to return" the jewelry, despite "numerous requests and demand to do so." *Id*. ¶¶ 42-43.

**B. Claims**

Plaintiff asserts five separate causes of action. In Count 2, she alleges that all defendants "used unfair or unconscionable means to collect or attempt to collect a dubious debt from plaintiff," in violation of § 1692f of the FDCPA, 15 U.S.C. § 1692f. Compl. ¶¶ 52-53. In Count 3, she alleges that all defendants, except for the Law Offices of Steven Zakharyayev, PLLC, "used deceptive means to collect or attempt to collect [a] debt from plaintiff" in violation of § 1692e of the FDCPA, 15 U.S.C. § 1692f. Compl. ¶¶ 54-55.

In Count 1, ostensibly brought under the DJA, plaintiff asserts that a "justiciable controversy" exists between the parties with respect to defendants' "deceptive and false Debt Collection Communications," as that phrase as used in the FDCPA. Compl. ¶ 47. She then asserts that the defendants other than SkyFi are "vicariously liable" for SkyFi's actions "in connection with any collection efforts made in relation to the bogus debt." *Id*. ¶ 49. Rather than seek a declaration, however, plaintiff alleges that she has "sustained actual damages" as a result of their collection efforts, including injury to her reputation, damage to her credit, and mental distress. *Id*. ¶ 51.

In Count 4, plaintiff alleges that defendants have "committed the following wrongful acts against Plaintiffs [sic], which are tortious under the Constitution and laws of the State of New York: trespass, [t]ortious interference, [l]arceny, [and] violation of the right to privacy[.]" Compl. ¶ 57. Finally, in Count 5, brought pursuant to § 1983, plaintiff alleges that Zakharyayev and Romeo, "who acted under color of law," violated her rights under the Fourteenth Amendment, causing her "mental and emotional pain and suffering." *Id.* ¶¶ 61, 63.[18]

**C. Procedural History**

Plaintiff filed this action on August 27, 2025, just three weeks after the Monroe County Judgment was issued. On September 2, 2025, the Hon. Dale E. Ho, United States District Judge, referred the case to me for general pre-trial supervision. *See* Dkt. 4. On September 15, 2025, Chase appeared and requested an extension of its time to respond to the complaint, *see* Dkt. 23, which the Court granted. *See* Dkt. 26. On October 6, 2025, "[i]n the interest of streamlining these proceedings," the Court *sue sponte* extended all remaining defendants' time to answer or respond to the complaint to October 24, 2025. Dkt. 27. On October 22, 2025, the SkyFi Defendants appeared, *see* Dkt. 28, and, on October 24, 2025, they requested an extension until November 21, 2025, to respond to the complaint, *see* Dkt. 29, which the Court granted. Dkt. 34.

Meanwhile, on October 24, 2025, Chase filed its motion to dismiss all of plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), supported by a memorandum of law (Chase Mem.) (Dkt. 32). On October 27, 2025, Judge Ho referred that motion to me for report and

[18] The Complaint also makes two passing references (in its introduction and as part of plaintiff's jurisdictional allegations) to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.SC. § 1964(c). *See* Compl. at ECF p. 1; *id.* ¶ 1. However, plaintiff has carefully numbered, labeled, and enumerated the five claims described above, without including a RICO claim. Moreover, in the passages that do mention RICO, plaintiff stops well short of alleging that defendants violated RICO. Instead, she suggests that they may have committed "predicate acts" "within" RICO. *Id.* at ECF p. 1. Consequently, I do not construe the Complaint as asserting a RICO claim. Nor does it plead any facts that could support such a claim.

recommendation. *See* Dkt. 33. On October 29, 2025, plaintiff submitted an affidavit in opposition to Chase's motion to dismiss (Pl. Chase Opp.) (Dkt. 36), and on November 5, 2025, Chase submitted its reply brief (Dkt. 43) in further support of its motion.

On November 26, 2025, the SkyFi Defendants filed their motion to dismiss all of plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6), supported by the declaration of their attorney Steven A. Metcalf (Dkt. 55), which was incorrectly lodged in the Court's ECF system as its own motion, and a memorandum of law (SkyFi Mem.) (Dkt. 56), attaching four exhibits. On December 4, 2025, plaintiff submitted an affidavit in opposition to the SkyFi Defendants' motion to dismiss (Pl. SkyFi Opp.) (Dkt. 67), to which the SkyFi Defendants did not reply. On January 5, 2026, Judge Ho referred the SkyFi Defendants' motion to dismiss to me for report and recommendation, along with "any future dispositive motion." Dkt. 72.

Meanwhile, between October 27 and November 12, 2025, plaintiff requested certificates of default against the defendants who had not yet appeared. *See* Dkts. 37-42, 45-48, 51-52. These filings were rejected by the Clerk of Court for technical reasons. On November 13, 2025, plaintiff again requested a certificate of default against Zakharyayev. *See* Dkts. 49-50. That same day, the Clerk issued the requested certificate. *See* Dkt. 53.

On November 26, 2025, plaintiff made another request for certificates of default, this time against Kim (who had by then moved to dismiss the complaint), Zakharyayev PLLC, and Romeo. *See* Dkts. 57-64. On December 1, 2025, the Clerk issued the requested certificates as to Zakharyayev PLLC and Romeo. Dkts. 65, 66.[19]

[19] On January 2, 2026, Zakharyayev and Zakharyayev PLLC (collectively, the Zakharyayev Defendants) moved to vacate the certificate of default against them, *see* Dkt. 69, and, on February 20, 2026, Romeo moved to vacate the certificate of default against her. *See* Dkt. 80. Those motions are beyond the scope of this Report and Recommendation.

On January 7, 2026, plaintiff filed a "Notice of Motion" seeking to compel Chase to "re-open & restore access" to Gia's bank accounts, *see* Pl. Mot. (Dkt. 73) at 1, supported by her declaration, attesting that she "found out" on August 6, 2025 that the three accounts in question were "frozen/restricted" and showed a balance of negative $287,454.43. Dkt. 74 at 1. On January 21, 2026, Chase filed a memorandum in opposition (Chase Mot. Opp.) (Dkt. 76), together with the declaration of its attorney Ashley A. LeBlanc (LeBlanc Decl.) (Dkt. 77), attaching various exhibits. Chase explains that all three accounts belong to Gia, not plaintiff, and that on August 7, 2025, Chase received an information subpoena and restraining notice from Zakharyayev PLLC, on behalf of SkyFi, attaching the Monroe County Judgment. Chase Mot. Opp. at 1; LeBlanc Decl. Ex. A (August 2025 account statements for all three accounts, held in the name of Gia Treasure, Inc.), *id*. Ex. B (information subpoena and restraining notice).[20] Chase further states that as of August 11, when it responded to the information subpoena, the three accounts held a total of $355.89 (in the aggregate). *See* Chase Mot. Opp. at 2-3; LeBlanc Decl. Ex. C (Chase response to information subpoena).

On February 6, 2026, plaintiff submitted a reply affidavit (Pl. Mot. Reply) (Dkt. 79), arguing that the LeBlanc declaration is "void & of no effect" because LeBlanc is an attorney rather than "a person with knowledge of [the] facts." Pl. Mot. Reply ¶¶ 3-4. However, plaintiff does not challenge any of the facts set out by Chase, and once again does *not* assert that SkyFi obtained a turnover order or was otherwise able to apply the funds in Gia's Chase accounts to satisfaction of the Monroe County Judgment.

[20] Under CPLR § 5222, a properly served restraining notice requires its recipient to freeze the subject accounts, "except upon direction of the sheriff or pursuant to an order of the court," for one year after service of the notice, "or until the judgment . . . is satisfied or vacated, whichever comes first." CPLR § 5222(b).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). In determining whether subject matter jurisdiction exists, the court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). On a Rule 12(b)(1) motion, the court may also consider matters outside of the pleadings. *Morrison*, 547 F.3d at 170.

### B. Rooker-Feldman

Under the *Rooker-Feldman* doctrine,[21] a federal district court lacks the statutory or constitutional power to adjudicate claims in which "a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (*per curiam*). Thus, as the Supreme Court recently reaffirmed, federal district courts are barred from adjudicating "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1748, 1753-54 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

---

[21] *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).

For purposes of the *Rooker-Feldman* doctrine, it does not matter whether the state court judgment is still "subject to further review in state appellate proceedings." *T. M.*, 146 S. Ct. at 1744, 1746 n.2 (abrogating *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005), to the extent it suggested that the *Rooker-Feldman* doctrine does not apply to "interlocutory state judgments"). Nor does it matter whether the state court judgment was issued after trial or by default. *See Worley v. Simon Meyrowitz & Meyrowitz, P.C.*, 2023 WL 8664375, at *1 (2d Cir. Dec. 15, 2023) (summary order) (applying *Rooker-Feldman* to FDCPA suit attacking validity of state court default judgment); *Neshewat v. Salem*, 194 F. App'x 24, 25 (2d Cir. 2006) (summary order) (affirming application of *Rooker-Feldman* to dismiss Salem's counterclaim "seeking review or relief from a default judgment" entered against Salem in state court); *Andrews v. Citimortgage, Inc.*, 2015 WL 1509511, at *5 (E.D.N.Y. Mar. 31, 2015) (noting that "the *Rooker–Feldman* doctrine applies equally to state court judgments obtained by default," and collecting cases).

**C. Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the factual content pleaded enables a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When evaluating a Rule 12(b)(6) motion, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving

party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, a pleading that includes only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The court is not required to accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In addition to the facts alleged in the body of the complaint, the Court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). The court may also consider documents of which judicial notice may be taken, *see Red Rock Sourcing LLC v. JGX LLC*, 2024 WL 1243325, at *10-11 (S.D.N.Y. Mar. 22, 2024), including the existence and content of pleadings and other documents filed in prior litigations. *Liberty Mut. Ins. Co.*, 969 F.2d at 1388. If "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Lewis v. City of New York*, 762 F. Supp. 3d 290, 300 (S.D.N.Y. 2025) (quoting *Poindexter v. EMI Record Group Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012)).

**D. Pro Se Pleadings**

Where, as here, the plaintiff is proceeding pro se, the Court must liberally construe her submissions "to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (quoting *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d

421, 426 (S.D.N.Y. 2003)). Thus, a pro se plaintiff, like other plaintiffs, "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## III. ANALYSIS

### A. Rooker-Feldman

Relying on the *Rooker-Feldman* doctrine, defendant Chase argues that this Court lacks jurisdiction over plaintiff's claims to the extent they challenge either the validity of the Monroe County Judgment or the existence and amount of the underlying debt to SkyFi. *See* Chase Mem. at 11-13. Chase is correct.

As against Chase, plaintiff principally alleges that it helped SkyFi "seize[] her accounts" pursuant to a "bogus judgment" issued by the state court. Compl. ¶¶ 30, 36. She further alleges that that the seizure was "unlawful" because defendants' intent was to "collect a nonexistent debt." *Id*. ¶ 37; *see also id*. ¶ 49 (alleging that various defendants, including Chase, are vicariously liable for the actions of SkyFi "in connection with any collection efforts made in relation to the bogus debt"). Indeed, plaintiff offers no basis for her FDCPA and declaratory judgment claims other than these two contentions: that the Monroe County Judgment is "bogus" and that her underlying debt to SkyFi is "nonexistent" (or at least "dubious"). *See id*. ¶ 48 (alleging that defendants' communications with plaintiff were intended to "wantonly harass, oppress and abuse" her because they "related to the collection of a bogus and nonexistent debt"); *id*. ¶ 53 (alleging that defendants used "unfair or unconscionable means to collect or attempt to collect a dubious debt from plaintiff" in violation of the FDCPA).

As the Second Circuit explained in *Worley*, these are not "independent claims" under FDCPA. 2023 WL 8664375, at *3. "Essentially, because [Keswani] fundamentally believes the state-court debt to be invalid, she contends that [defendants'] attempts to collect on the debt are also invalid. But this Court cannot review or undo the state-court judgment." *Id*.; *see also*

*Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002) (portions of plaintiff's FDCPA claims were barred by *Rooker-Feldman* because they "would require the court to determine that a state court judgment was erroneously entered or was void"); *Murphy v. GE Cap. Asset Corp.*, 38 F. App'x 86, 87 (2d Cir. 2002) (court lacked jurisdiction over RICO claims premised on plaintiff's allegations that defendants procured a state court foreclosure judgment through fraudulent means, because plaintiff "essentially asks us to conclude that the state court foreclosure action was invalid and should be reversed"); *Gifford v. United N. Mortg. Bankers, Ltd.*, 2019 WL 2912489, at *7 (S.D.N.Y. July 8, 2019) (dismissing FDCPA claims based on plaintiff's allegation that "the state court foreclosure judgment was fraudulently obtained" under *Rooker-Feldman*, because "[a]warding relief on this claim" would require the court to "improperly question 'the validity of the state court judgment'") (quoting *Graham v. Select Portfolio Serv., Inc.*, 156 F. Supp. 3d 491, 503-04 (S.D.N.Y. 2016)); *Hines v. HSBC Bank USA*, 2016 WL 5716749, at *4 (E.D.N.Y. Sept. 30, 2016) (dismissing FDCPA claims under *Rooker-Feldman* to the extent they "fundamentally challenge the legitimacy of the state court judgment, including by contesting the authenticity of the underlying debt instruments"). Since this Court cannot review, void, or set aside the Monroe County Judgment, it cannot entertain any of plaintiff's claims premised on the alleged invalidity of that judgment.

By the same token, this Court cannot entertain claims bottomed on plaintiff's assertion that the debt underlying the Monroe County Judgment – that is, the amount she owed to SkyFi as Gia's guarantor – was itself "bogus," "nonexistent," or "dubious," Compl. ¶¶ 48, 49, 53, because, "for Plaintiff to be vindicated on these claims, this Court would need to review the state court's determinations and ultimately decide that they were wrong; something *Rooker-Feldman* explicitly prohibits." *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 289 (E.D.N.Y. 2024); *see also Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 613 (2d Cir. 2020) (summary order)

(district court correctly dismissed plaintiffs' fraud claim as "barred from review by the *Rooker-Feldman* doctrine" because their central contention was that "their actual mortgage balance is much less" than the balance "found by the state court" in its judgment of foreclosure); *Winters v. State*, 2026 WL 710123, at *12 (E.D.N.Y. Mar. 13, 2026) (dismissing FDCPA, RICO, and other claims arising out of state court judgment of foreclosure where those claims "hinge entirely upon the allegation that Winters did not have any financial obligation to Bank of New York," which was "necessarily rejected by the State Court in the Foreclosure Action"); *Desir v. Florida Cap. Bank, N.A.*, 377 F. Supp. 3d 168, 173-74 (E.D.N.Y. 2019) ("[A]ttacking the very contract enforced by the state court as fraudulent is a claim that cannot be stated independently of the prior state court judgment; thus, *Rooker-Feldman* bars it."); *Quiroz v. U.S. Bank Nat. Ass'n*, 2011 WL 3471497, at *4 (E.D.N.Y. Aug. 5, 2011) ("[A]ny FDCPA claim based on the falsity of the debt [underlying the state-court judgment] is barred by *Rooker-Feldman*[.]") (record citation omitted).

In her affidavit in opposition to Chase's motion to dismiss, plaintiff argues that the *Rooker-Feldman* doctrine cannot apply to her claims because "nowhere in the original complaint did plaintiff articulate or allege that she was directly or indirectly seeking to vacate a lower court's decision or act." Pl. Chase Opp. ¶ 14. In the same affidavit, however, plaintiff reaffirms that the central theory of her claims against Chase is that she "owed no money to [Butress] and SkyFi on the day the false judgment was presented to defendant Chase." *Id.* ¶ 12. Since those claims "fundamentally challenge the legitimacy of the state court judgment," *Hines*, 2016 WL 5716749, at *4, including by "attacking the very contract enforced by the state court," *Desir*, 377 F. Supp. 3d at 173-74, this Court lacks jurisdiction to entertain them.[22]

[22] While it is true that plaintiff does not directly ask this Court to "vacate" the Monroe County Judgment, she expressly requests a judgment directing defendants to "disgorge" the $58,690.80 that SkyFi "unlawfully deducted" from Gia's Chase accounts at the rate of $690.48 per business day. Compl. ¶ 67. However, the state court necessarily found this sum to have been properly

**B. FDCPA**

Both Chase and the SkyFi Defendants argue that plaintiff's FDCPA claims (to the extent not barred by *Rooker-Feldman*) fail as a matter of law, because the statute does not apply to commercial financing transactions. Chase Mem. at 7-9; SkyFi Mem. at 11-12. Defendants are correct. Moreover, as explained below, this flaw renders plaintiff's FDCPA claims (Counts 1, 2 and 3) defective as to all seven defendants named in the Complaint.

**1. There Are No "Consumer Debts" at Issue in This Case**

"The relevant provisions of the FDCPA apply only to consumer debts, which are defined as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" *Keswani v. Athwal*, 2022 WL 1124820, at *3 (S.D.N.Y. Apr. 14, 2022) (quoting 15 U.S.C. § 1692a(5)). The Second Circuit has repeatedly instructed that, when "allegations in [a] complaint make clear that the claim arises from a *commercial* debt[,]" those allegations "cannot form the basis of an FDCPA claim as a matter of law[.]" *Paushok v. Ganbold*, 2022 WL 1421844, at *2 (2d Cir. May 5, 2022) (summary order); *see also Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006) ("[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA."), *superseded by statute on other grounds as stated in Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212-13 (2d Cir. 2017). "When deciding whether a debt is a consumer debt and therefore falls within the scope of

---

withdrawn when it accepted SkyFi's accounting of the debt. *See* Monroe Cty. Compl. ¶¶ 12, 14 (seeking a judgment of $138,785.42, plus interest and costs); *id*. Exs. C, D (SkyFi's account statements for each transaction with Gia, showing a total of $138,758.42 due *after* applying the daily remittances); Monroe County Judgment (awarding SkyFi $138,785.42, plus interest and costs, for a total of $143,757.60). Since this Court cannot review the correctness of the state court's calculation of plaintiff's debt, the disgorgement remedy she seeks is barred by *Rooker-Feldman*. *See Powell*, 840 F. App'x at 613 (federal district court was barred from adjudicating plaintiffs' claim that "their actual mortgage balance is much less" than the balance "found by the state court").

the FDCPA, courts focus on the purpose of the underlying transaction." *Paushok v. Ganbold*, 2021 WL 1063206, at *9 (S.D.N.Y. Mar. 18, 2021), *aff'd*, 2022 WL 1421844.

In *Keswani v. Athwal* (which, like the case at bar, was filed by plaintiff Keswani after a default judgment was entered against her in a state court debt collection action), Judge Abrams dismissed her FDCPA claims because her complaint did not "provide any non-conclusory allegations that the purported debt is consumer in nature." 2022 WL 1124820, at *3. In this case, the Complaint makes it crystal clear that the financial obligations at issue were *not* "consumer debts" as that term is used in the FDCPA. The December 2, 2024 purchase agreement, attached to the Complaint, was between two businesses: SkyFi and Gia. Plaintiff signed that contract (and the ancillary agreements) as President of Gia, and warranted that "this transaction is for business purposes and not for personal, family, or household purposes." 12/2/24 Purchase Ag. at 1. On the next page, the contract required Gia to "deposit all Future Receipts into [a] single business banking account," which "may not be used for any personal, family or household purposes[.]" *Id.* at 2. Although plaintiff alleges that she had a social relationship with Butress, *see* Compl. ¶¶ 13, 15, she also states, quite clearly, that the "loan" she sought through Butress was "for her business." *Id.* ¶ 14. The parties' underlying financial arrangements were thus "commercial" rather than "consumer" in nature.

The fact that plaintiff "personally guaranteed" the transaction between Gia and SkyFi does not transform commercial debt into consumer debt. *See Keswani*, 2022 WL 1124820, at *3 (dismissing plaintiff's FDCPA claims where the "debt that plaintiff personally guaranteed" was commercial debt). Indeed, "numerous courts have concluded that a personal guarantee on a business loan is commercial debt not covered by the FDCPA." *Paushok*, 2021 WL 1063206, at *9 (collecting cases); *see also Rosa v. Mandarich L. Grp., LLP*, 2024 WL 871209, at *5 (S.D.N.Y. Feb. 29, 2024) ("By the statute's plain language, it is not sufficient that the plaintiff be a natural

person or even a consumer obligated to pay a debt."). I note as well that plaintiff makes no effort to defend her FDCPA claims in either of her opposition affidavits, thereby abandoning them. *See Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 47 n.1 (2d Cir. 2018) (summary order) (affirming district court's dismissal of certain claims "on the ground that they were 'abandoned' by [pro se plaintiff] Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss"); *Romain v. State Farm Fire & Cas. Co.*, 639 F. Supp. 3d 416, 421 n.3 (E.D.N.Y. 2022) (deeming pro se plaintiffs' claims abandoned to the extent not addressed in their opposition to defendant's motion to dismiss); *McNair v. Ponte*, 2019 WL 1428349, at *6 (S.D.N.Y. Mar. 29, 2019) ("This Court has deemed claims abandoned even in cases where the plaintiff was proceeding *pro se*.") (collecting cases). Because Keswani does not allege "the existence of a consumer debt that would be covered by the protections of the statute," she has "failed to plead a cognizable FDCPA claim." *Paushok*, 2022 WL 1421844, at *2 (emphasis omitted). Therefore, Counts 2 and 3 of her Complaint – both expressly pled under the FDCPA – should be dismissed.

**2. Count 1 Is a FDCPA Claim**

Count 1 should also be dismissed. Although plaintiff labels the claim as one for a "Declaratory Judgment," and invokes the DJA, 28 U.S.C. § 2201, the only "justiciable controversy" she identifies is "with respect to defendants' deceptive and false Debt Collection Communications," which – she says – "constitute 'communications' as defined by 15 U.S.C. § 1692(a)(2) and 1692(a)(5) of the FDCPA." *Id.* ¶ 47. Moreover, as noted above, plaintiff does not in fact request any judicial declaration (as to the FDCPA or otherwise). Rather, after alleging that defendants engaged in unspecified communications "related to the collection of a bogus and nonexistent debt," *id.* ¶ 48, she seeks "actual damages" for the resulting "injury to her reputation, damage to her credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss." *Id.* ¶ 51. In substance, therefore, Count 1 appears to seek damages under

FDCPA, and must be dismissed for the same reason that requires dismissal of Counts 2 and 3: the absence of any "consumer debt" subject to the FDCPA.[23]

### 3. The FDCPA Claims Should Be Dismissed Entirely

Only four of the seven defendants named in the Complaint have (thus far) moved to dismiss it.[24] However, plaintiff's failure to identify any "consumer debt" within the reach of the FDCPA is fatal to her FDCPA claims against all defendants. Moreover, it is well settled that where, as here, "all of the defendants are similarly situated" with respect to a dispositive issue, *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund v. Canny*, 876 F. Supp. 14, 17 (N.D.N.Y. 1995), and plaintiff had "sufficient notice of the grounds for dismissal and an opportunity to be heard," *Fox v. City of New York*, 2019 WL 3003993, at *5 (S.D.N.Y. July 10, 2019), the flawed claims may be dismissed, *sua sponte*, as to all defendants. *Id*. (dismissing federal and state claims arising out of allegedly unlawful arrest as against all defendants, including "non-moving" police officers); *see also Herbert v. SanFeliz*, 2025 WL 887718, at *6 n.3 (S.D.N.Y. Mar. 21, 2025) (dismissing claims for "failure to train, negligence, deliberate indifference, and unlawful search" as against all defendants, including SanFeliz, who "did not join in [the] motion to dismiss," because "the Court's analysis on the issues presented by the Motion apply equally to all defendants") (cleaned up); *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 521 n.13 (S.D.N.Y. 2016) (dismissing securities fraud claim as against all defendants as time-barred, notwithstanding that only one

---

[23] If the Court were to construe Count 1 as seeking a *declaration* that defendants' conduct violated FDCPA, it would fail for the additional reason that, as Chase correctly points out, *see* Chase Opp. at 10-11, "neither equitable nor declaratory relief is available to private litigants under the FDCPA." *Allen v. United Student Aid Funds, Inc.*, 2018 WL 4680023, at *6 (S.D.N.Y. Sept. 28, 2018); *accord Wimberly v. Stern*, 2023 WL 6466465, at *7 (S.D.N.Y. Oct. 4, 2023); *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 298 (E.D.N.Y. 2005) (collecting cases).

[24] As noted above, the Zakharyayev Defendants and Jamie Romeo have moved to vacate the defaults entered against them. Dkts. 69, 80.

defendant moved on this point, because the analysis "will apply to all parties") (quoting *Doll v. Stars Holding Co.*, 2005 WL 2811767, at *1 (N.D. Cal. Oct. 27, 2005)); *Martinez v. Queens Cnty. Dist. Atty.*, 2014 WL 1011054, at *14 n.12, 19 (E.D.N.Y. Mar. 17, 2014) (dismissing plaintiff's second amended complaint "in its entirety," although "several defendants have not filed motions to dismiss," because the moving defendants provided ample "notice of the grounds for dismissal and an opportunity to be heard"), *aff'd,* 596 F. App'x 10 (2d Cir. 2015).

Here, as in the cases cited above, the Court's analysis of the deficiencies in plaintiff's FDCPA claims applies "equally to all defendants," *Herbert*, 2025 WL 887718, at *6 n.3, and the moving defendants provided plaintiff with "sufficient notice of the grounds for dismissal and an opportunity to be heard." *Fox*, 2019 WL 3003993, at *5.[25] Consequently, Counts 1, 2, and 3 should be dismissed, with prejudice, as to all defendants.

**C. Section 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York,* 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). Thus, the court's "first inquiry" in a § 1983 case is "whether the actions alleged by the plaintiffs come within the definition of 'under color of' [state] law." *Kia P. v. McIntyre*, 235 F.3d 749, 755 (2d Cir. 2000) (alteration in original)

[25] As noted above, both Chase and the SkyFi Defendants argued, in their motions to dismiss, that plaintiff failed to state any viable FDCPA claim because the underlying financial transactions were involved "commercial" rather than "consumer" debt. The Zakharyayev Defendants advance the same argument in their motion to vacate the default against them. *See* Dkt. 70 at 10-12 (arguing that they have a "meritorious defense" to plaintiff's claims, including that plaintiff's FDCPA claims fail because "the FDCPA does not apply to commercial transactions"). However, in her affidavit in opposition to the motion to vacate, plaintiff once again makes no effort to defend her FDCPA claims. *See* Dkt. 75.

(quoting *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997)); *see also Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (§ 1983 plaintiffs must "show state action").

Plaintiff's § 1983 claim, on its face, appears to be asserted only against two defendants: Jamie Romeo and Steven Zakharyayev, both of whom, according to plaintiff, are "state actors." Compl. ¶¶ 33, 60-61.[26] Nonetheless – presumably out of an abundance of caution – the SkyFi Defendants argue that they cannot be sued under § 1983 because they are "private parties" rather than "state actors." *See* SkyFi Mem. at 20-23. In her opposition affidavit, plaintiff does not directly reference her § 1983 claim. However, she suggests that defendant Butress conspired with officials in Monroe County to obtain the "bogus" Monroe County Judgment. *See* Pl. SkyFi Opp. ¶ 20 (asserting the Butress "bragged repeatedly and threateningly to me that he had overwhelming access and influence in the banks and courts to destroy me and make me disappear"); *see also* Compl. ¶ 33 (alleging that Butress "repeatedly bragged how he had many county court clerks outside New York County in his pocket who can give him judgments with a snap of his fingers"). I will therefore construe her §1983 claim, liberally, as alleging that Butress is liable under § 1983 because he entered into a conspiracy with the Monroe County Clerk – a state actor – to injure plaintiff by obtaining a "false," "bogus" judgment against her, Compl. ¶¶ 30, 36, predicated on a "nonexistent" debt. *Id.* ¶ 37.

---

[26] Romeo is a state actor. However, she is immune from suit under § 1983 in both her official and personal capacities. *See Gamble v. Off. of Cnty. Clerk in Bronx Cnty.*, 2025 WL 41999, at *2 (S.D.N.Y. Jan. 2, 2025) (dismissing § 1983 claims against the Bronx County Clerk's Office under the Eleventh Amendment, because "the office is an arm of the state," and against the Acting Bronx County Clerk individually, because "he is immune from Section 1983 liability under the judicial immunity doctrine"), *appeal dismissed,* 2025 WL 1304501 (2d Cir. Mar. 3, 2025). Zakharyayev, "as a private attorney, was not a state actor; that he was licensed by the state to practice law does not render him a state actor." *Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) (summary order); *accord Palmer v. City of New York*, 564 F. Supp. 3d 221, 243 (E.D.N.Y. 2021) (attorney representing bank in allegedly wrongful foreclosure proceedings "was not a state actor").

A private party can be subject to liability under § 1983 for conspiring with a state actor to violate the plaintiff's constitutional rights, "even if the state actor is immune from liability." *Elmasri v. England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (citing *Dennis v. Sparks,* 449 U.S. 24, 27-28 (1980)); *accord Shockome v. Cnty. of Dutchess*, 2006 WL 8461753, at *7 (S.D.N.Y. Feb. 27, 2006). However, to state such a claim, the plaintiff "must allege '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Szymonik*, 807 F. App'x at 102 (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)). "Conclusory allegations are insufficient; to be viable, a complaint must allege 'specific instances of misconduct.'" *Id.* (quoting *Ciambriello*, 292 F.3d at 325); *see also Palmer*, 564 F. Supp. 3d at 251 (dismissing §1983 conspiracy claim because plaintiffs "allege no specific facts to substantiate [their] conclusory allegation" that "Officer Ramos and Inspector Colon made an agreement to violate their constitutional rights").

Here, plaintiff alleges only that Butress boasted generally about having county clerks "in his pocket." She does not claim that he ever mentioned Romeo – or Monroe County – and she does not allege, even in conclusory terms, that any actual "agreement" existed with Romeo to permit SkyFi to obtain a "false" or "bogus" judgment in Monroe County on a "nonexistent" debt. Nor does she identify any "overt act" done in furtherance of the conspiracy, as required by *Szymonik*. 807 F. App'x at 102.[27] Consequently, plaintiff has failed to state a § 1983 claim against Butress (or

[27] Plaintiff does not even allege that it was Romeo who signed the Monroe County Judgment. I note, in this regard, that, according to the Monroe County website, the County Clerk serves not only as the Clerk of the Supreme Court; she is also the Clerk of the County Court, the County Registrar (the "official registrar of deeds, mortgages," and other real property records), and the Chief Notary for the county. *See* Monroe County, New York, County Clerk, https://perma.cc/236K-G5WL. Additionally, the Monroe County Clerk accepts passport and pistol permit applications, serves as the registrar of "assumed business name" certificates, naturalizes new citizens, sells fishing licenses, and provides "DMV services." *Id*.

any other SkyFi Defendant). Moreover, any such claim would be barred by the *Rooker-Feldman* doctrine, because the injury that plaintiff identifies is the Monroe County Judgment, and any relief would require this Court to "review and reject[]" that judgment, which it cannot do. *T. M.*, 146 S. Ct. at 1753.

Nor has plaintiff stated a § 1983 conspiracy claim against Chase. At best, plaintiff suggests that Chase (a private party) conspired with Butress (another private party) to "seize[] her accounts and paralyze[] her business" after SkyFi obtained the Monroe County Judgment. Compl. ¶ 30; *see also* Pl. Chase Opp. ¶¶ 8-9 (alleging that Butress also bragged about his "access and influence in the banks" and asking this Court to "adopt a finding" as to how Chase "got influenced by this corrupt defendant"). Even if plaintiff fleshed out this theory with specific factual allegations, she could not assert a § 1983 claim against Chase, because it is neither a state actor nor alleged to have conspired with one. Consequently, Count 5 of plaintiff's Complaint – to the extent it could be construed as asserting a § 1983 claim against the SkyFi Defendants or Chase – should be dismissed as against these defendants.[28]

**D. Leave to Amend (Federal Claims)**

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citations omitted). However, leave may "properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

[28] Because the moving defendants are not "similarly situated" to the defaulted defendants with respect to plaintiff's § 1983 claim, *Canny*, 876 F. Supp. at 17, the analysis set forth in this Report and Recommendation may not "apply equally" to the defaulted defendants. *Herbert*, 2025 WL 887718, at *6 n.3. Consequently, I do not recommend that Count 4 be dismissed as to all defendants at this time.

to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend is "futile" where the "plaintiff cannot cure the deficiencies in [her] pleadings to allege facts sufficient to support [her] claim." *Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019) (summary order); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (Where the "problem with [a complaint] is substantive [and] better pleading will not cure it," leave to amend should be denied as futile.).

The problem with plaintiff's FDCPA claims cannot be cured by better pleading. Her allegations concerning the financing arrangement between Gia and SkyFi, together with the clear terms of the contracts themselves (which she attached to her Complaint), demonstrate that her purported FDCPA claims arise out of commercial rather than consumer debts, which "are not covered by the protective provisions of the FDCPA." *Goldman*, 445 F.3d at 154 n.1; *see also Keswani v. Athwal*, 2022 WL 1124820, at *3 ("The relevant provisions of the FDCPA apply only to consumer debts[.]"). Therefore, plaintiff's FDCPA claims (Counts 1, 2, and 3) should be dismissed with prejudice.

Plaintiff's § 1983 claim (Count 5) should also be dismissed with prejudice, albeit only as against the moving defendants. Better pleading will not turn SkyFi, Kim, Butress, or Chase into a state actor. Moreover, plaintiff's affidavits in opposition to the motions to dismiss, which contain nothing but vague speculation concerning Butress's relationships with unnamed county clerks and unidentified banks, offer little if any hope that plaintiff could, through better pleading, state a plausible § 1983 conspiracy claim against any of the moving defendants. Even if she could state such a claim against Butress, based on an alleged agreement between him and the Monroe County Clerk to procure a "bogus" judgment against plaintiff, the resulting claim would be barred by *Rooker-Feldman*. Consequently, it would be futile to grant plaintiff leave to amend Count 5.

**E. State Law Claims**

In Count 4, plaintiff attempts to plead a variety of state common-law claims in the broadest possible terms, alleging that:

> [E]ach and every Defendant, jointly and severally, has committed the following wrongful acts against Plaintiffs, which are tortious under the Constitution and laws of the State of New York: trespass; Tortious interference, Larceny, violation of the right to privacy, [and] violation of rights otherwise guaranteed under the Constitution and laws of the State of New York.

Compl. ¶¶ 57-59. The moving defendants argue that by combining all conceivable state claims into one conclusory sentence, plaintiff has not given them "fair notice" of the claims against them; that she has not plausibly alleged facts to support any of the torts she names; and that even if she has stated (or could state) a claim against them under New York law, the Court should decline to retain jurisdiction over those claims because plaintiff has no pleaded no cognizable federal claims against them. *See* Chase Mem. at 13-17; SkyFi Mem. at 17-19.

Plaintiff's factual allegations may be sufficient to support one or more state law tort claims against Butress – in particular, for refusing to return the 19 items of jewelry that he "agreed to hold" for plaintiff but then unlawfully "confiscated." Compl. ¶¶ 41-43.[29] However, as the parties to this action are not diverse, this Court's original jurisdiction, conferred by 28 U.S.C. § 1331, does not extend to any claims pleaded under state law, and its supplemental jurisdiction extends only to state law claims that are "so related" to her viable federal claims as to "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here,

[29] In New York, there is no private civil right of action for "larceny." *See Scott v. AOL Time Warner*, 109 F. App'x 480, 481 (2d Cir. 2004) ("[L]arceny is a criminal charge that cannot be prosecuted by a private citizen."). However, a defendant who accepts custody of a plaintiff's property but then fails to return it on demand may be sued for replevin (if the plaintiff seeks the return of her property) or conversion (if the plaintiff seeks damages for its loss). *See Shim v. Luxury Asset Cap., LLC*, 828 F. Supp. 3d 351, 356 (S.D.N.Y. 2026) (explaining that the difference between replevin and conversion "is one of remedy").

plaintiff does not explain how – if at all – her state law claims against Butress, for refusing to return her jewelry, are related to her surviving federal claims (that is, her § 1983 claims against Romeo and the Zakharyayev Defendants), which arise entirely out of the Monroe County Action. Consequently, plaintiff's state law claims should be dismissed – without prejudice to refiling in state court – for lack of subject matter jurisdiction. *See, e.g.*, *Lurch v. City of New York*, 2019 WL 6773216, at *3 n.1 (E.D.N.Y. Dec. 12, 2019) (dismissing all of plaintiff's federal claims except for a § 1983 excessive force claim against a police officer, and then dismissing his state law claims, for "assault and battery against the store owner and employees," because they "do not arise out of the same case or controversy that survives this decision").[30]

**F. Preliminary Injunction Motion**

Even if Your Honor declines to dismiss all of plaintiff's claims against Chase, her motion to compel Chase to "re-open and restore" the three bank accounts subject to SkyFi's post-judgment restraining notice, construed as a motion for a preliminary injunction, should be denied. First, plaintiff Keswani lacks standing to seek relief with respect to bank accounts belonging to Gia. *See Manson v. Friedberg*, 2013 WL 2896971, at *3 (S.D.N.Y. June 13, 2013) ("[P]roperty of the LLC is not property of individual members and members of an LLC have no interest in the specific

[30] Chase urges the Court to dismiss the state law claims under 28 U.S.C. § 1367(c)(3), which permits a district court to decline supplemental jurisdiction over state law claims where it has "dismissed all claims over which it has original jurisdiction." *See* Chase Mem. at 13-14. However, § 1367(c)(3) "does not apply in a situation where federal claims remain in the litigation, even if those claims have been dismissed against [some] of the parties involved." *Oladokun v. Ryan,* 2011 WL 4471882, at *10-11 (S.D.N.Y. Sept. 27, 2011) (rejecting the practice of declining to exercise jurisdiction under § 1367(c)(3) "on a party-by-party basis"); *see also Ighault v. City of New York*, 2024 WL 1623321, at *4 n.5 (E.D.N.Y. Apr. 15, 2024) ("28 U.S.C. § 1367(c)(3) does not apply here, because I am not dismissing *all* claims over which the Court has original jurisdiction – there are federal claims remaining against the USA Defendants."); *Burton v. Cnty. of Westchester*, 2022 WL 2340478, at *8 (S.D.N.Y. June 29, 2022) (concluding that "the Court lacks the discretionary authority to decline jurisdiction, sever state law claims, and send them back to state court" where "not all federal claims have been dismissed").

property of the LLC."). Second, plaintiff has not satisfied the requirements for preliminary injunctive relief, which are: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Toma v. Camarda*, 2026 WL 2323459, at *1 (S.D.N.Y. Aug. 11, 2026) (Ho, J.) (quoting *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022)). Of these, "the single most important prerequisite for the issuance of a preliminary injunction" is a showing of irreparable harm. *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir. 2023) (citation omitted). Here, plaintiff cannot show that she has suffered or will suffer any irreparable harm absent injunctive relief, particularly since: the Chase accounts belonged to Gia, rather than to plaintiff personally; there was less than $360 in those accounts when they were frozen, *see* LeBlanc Decl. Ex. C (response to information subpoena); and – even if the dollar amount were higher – the injury could be "adequately addressed by money damages." *Toma*, 2026 WL 2323459, at *2 (declining to grant preliminary injunction to redress "the withdrawal of $60,000" from a shared account without proper notice, consultation, or authorization).[31] Plaintiff is therefore not entitled to a preliminary injunction.

## IV. CONCLUSION

For the reasons set forth above, I recommend, respectfully, that the motions to dismiss (Dkts. 30, 54) be GRANTED; that plaintiff's FDCPA claims (Counts 1, 2 and 3) be DISMISSED as to all defendants, for failure to state a claim upon which relief can be granted, with prejudice; that her claim under § 1983 (Count 5) be DISMISSED as to defendants SkyFi, Kim, Butress, and Chase, for failure to state a claim upon which relief can be granted, with prejudice; that her state

[31] In any event, it has now been more than one year since Chase was served with the restraining notices, meaning that the accounts are no longer restrained. *See* CPLR § 5222(b).

law claims (Count 4) be DISMISSED as to defendants SkyFi, Kim, Butress, and Chase, for lack of supplemental jurisdiction, without prejudice to refiling in state court; and that her preliminary injunction motion (Dkt. 73) be DENIED.

Dated: New York, New York
September 8, 2026

**BARBARA MOSES**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. Dale E. Ho, in accordance with his individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Ho. Failure to file timely objections will result in a waiver of such objections and will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).